UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARY R., | ) | Case No. ED CV 19-2431-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.

## __INTRODUCTION__

On December 17, 2019, plaintiff Mary R. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly discounted the opinion of a state

agency physician; and (2) whether the ALJ properly determined that plaintiff did not suffer from a severe mental impairment at step two.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-11; *see* Memorandum in Support of Defendant's Answer ("D. Mem.) at 2-9.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly discounted the opinion of the state agency physician and properly determined that plaintiff did not suffer from a severe mental impairment.  The court therefore affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 52 years old on September 15, 2015, the alleged disability onset date.[1]  AR at 92-93, 120.  She has a high school diploma and past relevant work as a childcare attendant and medical assistant.  *Id.* at 96, 110-11.

On May 23, 2016, plaintiff filed applications for a period of disability, DIB, and SSI, alleging she was unable to work because of bilateral carpal tunnel in both hands, hyperthyroidism, high blood pressure, and depression.  *Id.* at 120-21, 133-34.  The Commissioner denied plaintiff's application initially and on reconsideration, after which she filed a request for a hearing.  *Id.* at 119-132, 146-57, 204-208.

Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ on December 13, 2018.  *Id.* at 94-109.  The ALJ also heard testimony from Joey Kilpatrick, a vocational expert.  *Id.* at 110-17.  On January 15, 2019, the ALJ denied plaintiff's claims for benefits.  *Id.* at 16-29.

---

[1]  Plaintiff initially alleged that she became disabled on June 30, 2013, but at the administrative hearing changed her alleged onset date to September 15, 2015.  AR at 92-93, 120.

1   Applying the well-known five-step sequential evaluation process, the ALJ
2   found at step one that plaintiff had not engaged in substantial gainful activity since
3   September 15, 2015, the amended alleged onset date. *Id*. at 19.

4   At step two, the ALJ found that plaintiff suffered from the following severe
5   impairments: bilateral carpal tunnel syndrome and hypertension. *Id.* at 20.  But the
6   ALJ found that plaintiff's medically determinable mental impairment of depression
7   was not severe, because it did not cause more than minimal limitations in
8   plaintiff's ability to perform basic mental work activities. *Id.* at 21-23.

9   At step three, the ALJ found plaintiff's impairments, whether individually or
10  in combination, did not meet or medically equal one of the listed impairments set
11  forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 23.

12  The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and
13  determined that plaintiff had the RFC to perform no greater than light work with
14  the limitations that she could: occasionally climb ladders, ropes, and scaffolds;
15  perform all other postural activities on a frequent basis, including climbing ramps
16  and stairs, balancing, stooping, kneeling, crouching, and crawling; frequently
17  handle and finger with the bilateral upper extremities; and would need to avoid
18  concentrated exposure to hazards in the workplace, such as unprotected heights or
19  dangerous machinery. *Id.* at 24.

20  The ALJ found, at step four, that plaintiff was able to perform her past
21  relevant work as a medical assistant as generally performed. *Id.* at 28-29.
22  Consequently, the ALJ concluded plaintiff did not suffer from a disability as

23
24
       [2]   Residual functional capacity is what a claimant can do despite existing
25  exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 155-
26  56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,
    the ALJ must proceed to an intermediate step in which the ALJ assesses the
27  claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151
28  n.2 (9th Cir. 2007).

3

1  defined by the Social Security Act.  *Id.* at 29.

2      Plaintiff filed a timely request for review of the ALJ's decision, which was

3  denied by the Appeals Council.  *Id.* at 1-6.  The ALJ's decision stands as the final

4  decision of the Commissioner.

5                                    **III.**

6                          **STANDARD OF REVIEW**

7      This court is empowered to review decisions by the Commissioner to deny

8  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

9  Administration must be upheld if they are free of legal error and supported by

10  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

11  (as amended).  But if the court determines the ALJ's findings are based on legal

12  error or are not supported by substantial evidence in the record, the court may

13  reject the findings and set aside the decision to deny benefits.  *Aukland v.*

14  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

15  1144, 1147 (9th Cir. 2001).

16      "Substantial evidence is more than a mere scintilla, but less than a

17  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

18  "relevant evidence which a reasonable person might accept as adequate to support

19  a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

20  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

21  finding, the reviewing court must review the administrative record as a whole,

22  "weighing both the evidence that supports and the evidence that detracts from the

23  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

24  affirmed simply by isolating a specific quantum of supporting evidence.'"

25  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

26  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

27  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

28

4

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

A.    **The ALJ Properly Rejected State Agency Physician Dr. Lockie's Opinion**

Plaintiff argues the ALJ erred by rejecting the opinion of state agency physician, Dr. George N. Lockie.  P. Mem. at 5-8.  Specifically, plaintiff argues the ALJ's rejection of Dr. Lockie's opinion that plaintiff was limited to occasional handling and fingering with her right hand was not supported by substantial evidence.  *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. § 404.1527(b).[3]  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician.

---

[3]    All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

*Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).  However, the "opinions of non-treating or non-examining physicians may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 1.    State Agency Physicians

On July 19, 2016, state agency physician Dr. George N. Lockie reviewed plaintiff's medical records at the initial level, and issued an RFC assessment. Dr. Lockie opined that plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, occasionally climb ladders, ropes, and scaffolds, and handle and finger frequently with her left hand and occasionally with her right hand.  AR at 127-28, 140-41.

On November 1, 2016, state agency physician Dr. A. Lizarraras reviewed plaintiff's medical records on reconsideration, and issued another RFC assessment. Dr. Lizarraras opined that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, occasionally climb ladders, ropes, and scaffolds, and handle and finger frequently with both hands.  *Id.* at 154-55, 168-69.  In reaching this determination, Dr. Lizarraras explained that more weight was assigned to the

longitudinal evidence that documents mild bilateral carpal tunnel syndrome, and mild L4-5 bilateral denervation without documented functionally significant neurological deficits or mechanical signs of radiculopathy. *Id.* at 155.

### 2.   **The ALJ's Findings**

The ALJ determined that plaintiff had the RFC to perform no greater than light work with the limitations that she could: occasionally climb ladders, ropes, and scaffolds; perform all other postural activities on a frequent basis; frequently handle and finger with the bilateral upper extremities; and would need to avoid concentrated exposure to hazards in the workplace, such as unprotected heights or dangerous machinery. *Id.* at 24.

In reaching his determination, the ALJ stated he gave substantial weight to the opinions of both state agency medical consultants Drs. Lockie and Lizarraras, finding they both limited plaintiff to a range of light work, including occasionally climbing ladders, ropes, or scaffolds. *Id.* at 26.  The ALJ found both of their opinions "generally consistent with the overall evidence of record." *Id.*  But the ALJ determined that Dr. Lizarraras's opinion regarding plaintiff's ability to frequently handle and finger bilaterally was "more consistent with the current record," including an August 2016 report that plaintiff had not really been in pain but her wrist hurt that day, and plaintiff's ability to care for her granddaughter, prepare meals, and do chores. *Id.*  The ALJ also cited to evidence that plaintiff was reported to have full cervical and lumbar spine range of motion and intact neurological findings, with reports of normal musculoskeletal findings, normal gait, fully intact motor strength, and later, full wrist range of motion with 4/5 strength. *Id.* (citing AR at 330, 363-64, 372-73, 433, 515).

Plaintiff argues the ALJ's reasons for rejecting Dr. Lockie's opinion that plaintiff was limited to occasional handling and fingering with her right hand were not supported by substantial evidence. *See* P. Mem. at 5-8.  But the ALJ

reasonably concluded that Dr. Lizarraras's opinion that plaintiff could frequently handle and finger bilaterally was more consistent with the record as a whole. *See* AR at 26.

Specifically, in addition to the August 2016 report that plaintiff stated she had not really been in pain apart from her wrist hurting that day (*see id.* at 418), the ALJ also relied on other probative evidence that was consistent with a limitation of frequent bilateral handling and fingering. This included plaintiff's testimony that she was able to care for her granddaughter, prepare meals, and do chores. *Id.* at 24, 26, 97, 107-08. Further, as the ALJ recounted, plaintiff's treatment records regarding examination of her hands and wrists were generally unremarkable. *Id.* at 25-28. For example, in January 2016, plaintiff appeared alert, oriented, and in no acute distress, she had normal musculoskeletal findings, normal gait and station, and fully intact motor strength. *Id.* at 330, 372-73. In June 2016, plaintiff had tenderness to palpation of the right wrist, but "essentially full" range of motion, 4/5 grip strength, and intact sensation and radial pulses. *Id.* at 363-64. In May and October 2017, plaintiff denied pain or weakness in her extremities, joint pain, or swelling, and she had normal musculoskeletal findings. *Id.* at 433, 443-44. In May 2018, plaintiff's examination again revealed normal musculoskeletal findings, and her neurological function was intact. *Id.* at 515. Plaintiff argues the ALJ failed to consider the EMG test from January 2016 that showed she had mild bilateral carpal tunnel syndrome, worse on the right side, and chronic radiculopathy of the L4-5 nerve root (*see* P. Mem. at 7-8); however, both the ALJ and Dr. Lizarraras specifically accounted for those findings in determining that plaintiff could frequently handle and finger bilaterally. *See* AR at 25, 155. As such, the ALJ properly credited Dr. Lizarraras's finding that plaintiff could frequently, rather than occasionally, handle and finger bilaterally, since it was supported by substantial evidence.

1    Plaintiff also argues the ALJ erred by determining that Dr. Lizarraras's

2  opinion was consistent with a finding that plaintiff could perform light work, since

3  Dr. Lizarraras opined that plaintiff could lift up to 50 pounds occasionally and 25

4  pounds frequently, which is indicative of medium work.  *See* P. Mem. at 5-7 (citing

5  20 C.F.R. § 404.1567(b)-(c)); AR 154, 168.  While plaintiff correctly asserts that

6  Dr. Lizarraras's lifting limitations were not consistent with a finding of light work,

7  she fails to establish how this error was harmful, since the ALJ ultimately limited

8  plaintiff to light work.  Plaintiff argues this error shows the ALJ failed to consider

9  that Dr. Lizarraras generally overestimated plaintiff's abilities, but that does not

10  follow.  The ALJ carefully considered and explained why he accepted Dr.

11  Lizarraras's opinion regarding fingering and handling limitations over that of Dr.

12  Lockie, and the ALJ's mischaracterization of Dr. Lizarraras's opinion as limiting

13  plaintiff to light work does not alter that.  *See Molina v. Astrue*, 674 F.3d 1104,

14  1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial

15  evidence supporting the ALJ's decision and the error does not negate the validity

16  of the ultimate conclusion").

17    Accordingly, the ALJ properly rejected the portion of Dr. Lockie's opinion

18  that concerned finger and handling limitations, and the ALJ's finding that plaintiff

19  could frequently handle and finger bilaterally was supported by substantial

20  evidence.

21  **B.    The ALJ Properly Found Plaintiff's Mental Impairment Non-Severe**

22    Plaintiff also argues the ALJ's step-two finding that plaintiff did not suffer

23  from a severe mental impairment was not supported by substantial evidence.  *See*

24  P. Mem. at 8-11.  Specifically, plaintiff asserts the ALJ interpreted a large portion

25  of the mental health evidence without the help of a medical expert, which is

26  improper.  *Id.* at 9-11.

27    At step two, the Commissioner considers the severity of the claimant's

28

impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Id*. (citation and quotation marks omitted).  Nonetheless, "[t]he claimant [still] carries the initial burden of proving a disability."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

To establish a medically determinable impairment, it must be supported by objective medical evidence, not only the plaintiff's statements.  *See* 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).  "[A]pplying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ found that plaintiff's medically determinable mental impairment of depression was not severe, because it did not cause more than a minimal limitation in plaintiff's ability to perform basic mental work activities.  *Id.* at 21.  In making this determination, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluation of mental disorders," which are known as the "paragraph B" criteria.  *Id.*  Specifically, the ALJ found plaintiff had no limitations in understanding, remembering, or applying information, interacting with others, maintaining concentration, persistence, or pace, and adapting or managing oneself.  *Id.* at 21-23.  Consequently, the ALJ found

1   plaintiff's mental impairment was not severe.  *Id.* at 23.

2          In reaching the determination that plaintiff's mental impairment was not

3   severe, the ALJ considered all of the evidence, including plaintiff's testimony, the

4   treatment records, and the medical opinions.  *See id*. at 21-23, 26-27.  The ALJ

5   found that the opinions of state agency psychological consultants Dr. Barry

6   Rudnick and Dr. K. Gregg supported the finding that plaintiff's mental impairment

7   was not severe, and he gave "some weight" to the opinions.  *Id.* at 26-27.  On July

8   26, 2016, Dr. Rudnick determined at the initial level that plaintiff did not have a

9   medically determinable mental impairment based on a review of plaintiff's

10  treatment records and activities of daily living.  *See id.* at 124-25.  On November 1,

11  2016, Dr. Gregg determined that plaintiff's mental impairment was not severe,

12  because plaintiff had no more than mild limitations in activities of daily living,

13  maintaining social functioning, and concentration, persistence, and pace, and no

14  repeated episodes of decompensation.  *Id.* at 152.

15         Plaintiff argues the ALJ's finding that plaintiff did not suffer from a severe

16  mental impairment was not supported by substantial evidence, because he

17  interpreted a large portion of plaintiff's mental health records – those from after

18  November 1, 2016 – without the help of a medical expert.  *See* P. Mem. at 8-10.  It

19  is true that an ALJ may not act as his own medical expert, since he is "simply not

20  qualified to interpret raw medical data in functional terms."  *Nguyen v. Chater*, 172

21  F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.

22  1975) (hearing examiner should not go outside the record to medical textbooks to

23  make his "own exploration and assessment" as to a claimant's impairments); *Miller*

24  *v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ

25  to act as the medical expert).  But that is not what the ALJ did here.  Rather, the

26  ALJ's finding that plaintiff's mental impairment was not severe was supported by

27  the state agency psychological consultants' opinions, who both found that plaintiff

28

11

did not have a severe mental impairment.  *See id.* at 26-27, 152, 166.  While their

opinions were based on plaintiff's records from before November 2016, the ALJ

properly considered their findings since the ALJ found them to be somewhat

consistent with the overall evidence of record, including medical evidence

subsequent to their opinions.  *See id.* at 26-27; *Andrews v. Shalala*, 53 F.3d 1035,

1041 (9th Cir. 1995) ("Reports of the nonexamining advisor need not be

discounted and may serve as substantial evidence when they are supported by other

evidence in the record and are consistent with it").  The ALJ was not required to

obtain another medical opinion regarding the evidence not reviewed by the state

agency physicians when he found their opinions consistent with that later evidence.

*See Owen v. Saul*, 808 Fed. App'x 421, 423 (9th Cir. 2020) (no error in giving

weight to opinions of state agency physicians who did not review later evidence;

"there is always some time lapse between a consultant's report and the ALJ hearing

and decision").

   While there are references to depression in the record, "[t]he mere existence

of an impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10

F.3d 678 (9th Cir. 1993).  Rather, as noted above, the overall treatment record

supports the ALJ's finding that plaintiff's mental impairment was not severe.  For

example, in June 2016, physician assistant Andrew Rivas noted that plaintiff was

alert and oriented with appropriate mood and affect.  *Id.* at 21, 363.  From August

to October 2016, social worker Kimberly Cox consistently reported that plaintiff

had normal sleep and appetite, normal behavior, normal mood and affect, normal

thought processes and content, and intact judgment and insight, although there was

a report of suicidal ideation.  *Id.* at 412-13, 414, 418.  In September 2016, Dr.

Trevender Ahluwalia examined plaintiff and reported that she had a tearful mood,

but coherent speech with questionable auditory hallucinations and no suicidal or

homicidal ideation.  *Id.* at 21, 547.  Dr. Ahluwalia then assessed that plaintiff had

1  major depression.  *Id.*   But in May 2017, Dr. Dustin Wong examined plaintiff and
2  reported that she had intact cognitive functioning, and was alert and in no acute
3  distress.  *Id.* at 443.  Additionally, while plaintiff indicated that she sometimes
4  forgets what she is supposed to do, the medical evidence did not demonstrate that
5  plaintiff had any difficulties in memory, insight, or judgment.  *See id.* at 21, 372,
6  412-13, 414, 418.  There was also no evidence that plaintiff had any issues with
7  interacting with others, or with concentration, persistence, and pace.  *See id.* at
8  103-04.  Further, the ALJ properly considered plaintiff's ability to take care of
9  herself and her granddaughter in finding that her mental impairment did not
10  interfere with her ability to function.  *See Molina*, 674 F.3d at 1113 (finding
11  plaintiff's ability to walk grandchildren to and from school, attend church, go
12  shopping, and take walks undermined her claims that she was incapable of being
13  around others without suffering disabling panic attacks).  Although plaintiff cites
14  to a few occasions where she had a "tearful mood" or was "very irritable," plaintiff
15  fails to provide any evidence establishing that she had severe work-related
16  limitations due to her mental impairment.

17  As such, contrary to plaintiff's assertion, the ALJ's finding that plaintiff did
18  not have a severe mental impairment was supported by substantial evidence.

19                                                   **V.**

20                                            **CONCLUSION**

21  IT IS THEREFORE ORDERED that Judgment shall be entered
22  AFFIRMING the decision of the Commissioner denying benefits, and dismissing
23  this action with prejudice.

24

25  DATED:  March 30, 2021

26                                                                    _____
                                                                         SHERI PYM
27                                                                         United States Magistrate Judge

28

                                                        13